UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JEFFREY L. BRECKENRIDGE, | ) | CASE NO. 4:09 CV2778 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J.T. SHARTLE, WARDEN, | ) | |
| F.C.I. ELKTON, | ) | |
| | ) | |
| Respondent. | ) | |

Before the court is pro se petitioner Jeffrey L. Breckenridge's above-captioned action against Warden J.T. Shartle at the Federal Correction Center in Elkton, Ohio (F.C.I. Elkton). Mr. Breckenridge, who is incarcerated at the F.C.I. Elkton, brings this action pursuant to 28 U.S.C. §2241. He asserts the respondent is abusing his discretion, in violation of the Second Chance Act, by limiting his placement in a Community Correction Center (C.C.C.) to 96 days.

*Background*

Mr. Breckenridge was named in a four count federal indictment in 2007. See United States v. Raney, et al, No. 2:07cr0172 (S.D. Ohio Aug. 9, 2007)(Graham, J.) He pleaded guilty to Count One and was sentenced to thirty-seven (37) months incarceration on January 2, 2008. The

federal sentence was directed to run concurrent with petitioner's unexpired state sentence.

In March 2008, petitioner was transported to F.C.I. Elkton. He appeared before the institutional unit team in September 2009 to discuss his future placement in a C.C.C. The Unit Team advised Mr. Breckenridge he would be eligible for at least 120 days, but no less than 90 day placement in a C.C.C. "based solely on the length of his sentence per . . . Warden J.T. Shartle." (Pet. at 3.) The following month, he was advised he would be recommended for 120 days placement in a C.C.C.

On November 4, 2009,[1] Mr. Breckenridge was notified he had been approved for and "scheduled for C.C.C. placement beginning on May 13, 2010. That being approximately 96 days of C.C.C. placement. That on or about September 14, 2009, petitioner began his administrative remedy process . . . ." (Pet. at 3.) With less than one year left on his prison term, Mr. Breckenridge requested 12 months placement in a C.C.C.

Warden Shartle denied petitioner's request, allegedly "with the standard boilerplate response stating the unit team had considered all the requirements of the Second Chance Act and BOP Program statement 7310.04 . . . ." (Pet. at 4.) Petitioner filed a Regional Administrative Appeal on or about October 16, 2009, but filed his petition in the court before receiving a Regional response.

Mr. Breckenridge alleges Warden Shartle engaged in "institutional arrogance" when he effectively instructed his staff "not to follow the intent and will of Congress." (Pet. at 1.) Petitioner believes the warden is limiting his placement in a a C.C.C. based purely on 10% of the

---

[1] If the court is to following the chronology of events recited in the petition, it would appear this date should be November 4, *2008*, not 2009.

length of his sentence. Moreover, he asserts the Warden refuses to "adhere" to the Second Chance Act and determine "C.C.C. placement based on the requirement that each placement is of sufficient duration (not to exceed 12 months) to provide the greatest likelihood of successful reintegration into the community." (Pet. at 1-2.) Petitioner maintains the Warden should be ordered to reconsider the length of his placement in a C.C.C. based on the requirements of the Second Chance Act rather than strictly based on the length of his sentence.

*Standard of Review*

Once an application for a writ of habeas corpus is filed, a judge "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, <u>unless</u> it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243 (emphasis added.) Based on the facts set forth above, petitioner is not entitled to habeas relief in this matter.

*28 U.S.C. § 2241*

For prisoners seeking to challenge the "legality or duration" of confinement, habeas corpus proceedings are the proper mechanism. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973). A federal prisoner must first exhaust his available remedies before filing a § 2241 petition for habeas corpus relief. <u>Little v. Hopkins</u>, 638 F.2d 953, 953-54 (6th Cir.1981) (per curiam). Petitioner did not fully exhaust his administrative remedies before requesting habeas relief in this court. As the Sixth Circuit has noted, "[t]he Bureau of Prisons should be given the opportunity to consider the application of its policy to [the] petitioner's claim before the matter is litigated in the federal courts." <u>Urbina v. Thoms</u>, 270 F.3d 292, 295 n. 1 (6th Cir.2001) (quoting <u>Taylor v. United States</u>, No. 95-5150, 1995 WL 460512(6th Cir. Aug. 2,1995).

Exhaustion is not a strict statutory, or otherwise jurisdictional, requirement in federal habeas corpus proceedings. Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990), overruled on other grounds, Reno v. Koray, 515 U.S. 50, 54-55 (1995). Here, petitioner claims he started the administrative exhaustion process, but aborted his efforts because the date by which he sought relief was fast approaching Eschman v. Fed. Bureau of Prisons, 2006 U.S. Dist. LEXIS 6739 at *4 (E.D.Ky.2006) ("[the] judicially created exhaustion requirement [in the habeas context] is excused if the prisoner can demonstrate that pursuing administrative remedies would be futile."); Colton v. Ashcroft, 299 F.Supp.2d 681, 690 (E.D .Ky.2004) (where pursuit of administrative remedies is futile, a habeas petitioner need not satisfy the exhaustion requirement). Because the date by which petitioner seeks release to a C.C.C. is close, it would be prudent to waive the exhaustion requirement to address his claims on the merits. See id. ("[w]here exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court"); see also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"), cert. denied, 528 U.S. 846 (1999). For the reasons outlined below, the petition is denied.

*Second Chance Act*

On April 9, 2008, the Second Chance Act ("the Act) was signed into law, authorizing the Bureau of Prisons ("BOP") to consider placing inmates in an RRC for a maximum of 12 months of an inmate's sentence based on five factors in 18 U.S.C. § 3621(b). See 18 U.S.C. § 3624(c)(1). The Act amended 18 U.S.C. § 3624(c)(1) to mandate the BOP Director shall "ensure that a prisoner

4

serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 660, 692 (2008). In a recently unreported opinion from the United States District Court for the Central District of California, the court provided the following overview of the affect of the Act:

> Amended section 3624(c)(1) authorizes the BOP to consider placing an inmate in an RRC for up to the final 12 months of his or her sentence, rather than the final six months that were available pre-amendment. Amended section 3624(c)(4) also states that nothing in section 3624 "shall be construed to limit or restrict the authority of the Director or of the Bureau of Prisons under [18 U.S.C. § 3621, the statute empowering the BOP to take a convict into custody and designate a place of imprisonment.]" The Act requires the BOP to issue new RRC regulations within 90 days. 18 U.S.C. § 3624(c)(6) (amended).
>
> In accordance with the Second Chance Act, on April 14, 2008, the BOP issued an interim policy memorandum on RRC placement considerations. The memorandum states that the "categorical timeframe limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 (i.e., the ten percent limit that Petitioner challenges in this petition) "are no longer applicable and must no longer be followed." The memorandum further requires that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC placement, . . . , were to be reconsidered under the standards set out in the memorandum.

Montes v. Sanders, No. CV 07-7284-CJC, 2008 WL 2844494, at *1 (C.D. Cal. July 22, 2008).

Under this new policy, inmates must now be reviewed on an individual basis under the criteria set

forth in 18 U.S.C. § 3621(b). See Miller v. Whitehead, 527 F.3d 752, 755 (8th Cir.2008).

Mr. Breckenridge was incarcerated one month before enactment of the statute. Clearly, he was entitled to consideration for C.C.C. placement under the §3621(b) factors amended by the Second Chance Act. The facts he recites in his petition suggest, moreover, that the staff evaluated his potential placement having "considered all the requirements of the Second Chance Act and BOP program statement 7310.04." (Pet. at 4.) Under the Act, C.C.C. placement decisions must be made on an individual basis with reference to the following five-factor criteria set out in 18 U.S.C. § 3621(b):

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence--
>
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Therefore, before a prisoner is even considered eligible for transfer, the BOP

must consider the factors set forth in 18 U.S.C. § 3621(b). Both the BOP staff and Mr. Breckenridge state that his eligibility for C.C.C. place was evaluated under the criteria required by the Second Chance. The fact that he did not receive the full length of C.C.C. placement time he requested does not mean the BOP failed to comply with the Act.

*Transfer Not Appropriate Remedy*

Other than arguing the BOP should have considered him for one year placement, petitioner does not assert what right entitles him to twelve months placement in a C.C.C. The Supreme Court has explained it will "reach the quest of what process is due only if the inmates establish a constitutionally protected liberty interest." Wilkinson v. Austin, 545 U.S 209, 221 (2005). Well settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983). Simply because the BOP has discretion to transfer or assign an inmate to a C.C.C. does not mean that it is required to do so, provided that it considers the appropriate factors. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 249 (3d Cir.2005).

Here, petitioner seeks immediate transfer to an RRC or C.C.C.. The remedy in this case is not an immediate transfer; rather, Mr. Breckenridge's remedy is a proper exercise of discretion by respondent. See id., at 251 (3d Cir.2005). Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoners." 18 U.S.C. § 3621; Moody v. Daggett, 429 U.S. 78, 88 (1976). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Petitioner has no due process right, protected by the Fifth Amendment, to be placed in a

CCC earlier than the date on which the BOP assigns him--as long as the BOP has considered the factors set forth in § 3621(b) as required by the Second Chance Act of 2007.

Based on the foregoing, not only is petitioner not entitled to immediate release to a C.C.C., his request for an order directing Warden Shartle to follow the Act rather than the invalid 10% rule is moot.[2] Petitioner states "[t]hat on or about October 2009, petitioner was being recommended for 120 days of C.C.C. placement." (Pet. at 3.) Yet he complains Warden Shartle then denied his request for one year placement in a C.C.C. on October 10, 2009 because "the unit team had considered all the requirements of the Second Chance Act" and determined 96 days placement was appropriate. (Pet. at 4)(emphasis added.) The fact that 96 days is also close to 10% of petitioner's sentence does not negate the fact that his placement was evaluated under the criteria set forth in the Second Chance Act.

Accordingly, Mr. Beckenridge's request for an order directing the Warden to follow the Second Chance Act and not the invalidated regulations is **moot** because petitioner has already obtained that relief. Contrary to his assertion, a one year placement in a C.C.C. is not mandated simply because petitioner believes he would benefit from an extended stay.

*Conclusion*

Based on the foregoing, this petition is dismissed as moot. The court certifies,

---

[2] The "10% rule" to which petitioner alludes was set forth in 28 C.F.R. §§ 570.20 and 570.21. On April 14, 2008, the BOP issued a memorandum requiring staff to review inmates 17-19 months before their projected release date using the statutory factors. The memorandum states the pre-release placement decisions "be made on an individual basis ... according to ... the criteria in 18 U.S.C. § 3621(b) ... [and that] 28 C.F.R. §§ 570.20 and 570.21 ... are no longer applicable, and must no longer be followed." (BOP Mem. of 4/14/08). On October 21, 2008, the BOP issued new regulations to replace those invalidated by Rodriguez v. Smith, 541 F.3d 1180, 1186 & n. 6 (9th Cir.2008) (declaring 28 C.F.R. §§ 570.20 and 570.21 invalid).

pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

   IT IS SO ORDERED.

                <u>S/Peter C. Economus - 2/22/10</u>
                PETER C. ECONOMUS
                UNITED STATES DISTRICT JUDGE